**Bruce D. BURTOFF, Appellant**

v.

**James J. FARIS, Appellee.**

**Nos. 06–CV–407, 06–CV–810.**

District of Columbia Court of Appeals.

Argued Sept. 28, 2007.

Decided Nov. 15, 2007.

Bruce D. Burtoff, pro se.

Shirlie N. Lake, Baltimore, MD, with whom Camille E. Shora, Washington, DC, was on the brief, for appellee.

Before FARRELL, RUIZ, and BLACKBURNE–RIGSBY, Associate Judges.

FARRELL, Associate Judge:

Appellant Burtoff sued appellee Faris for legal malpractice (and a related conflict of interest) after Faris had been counsel to Burtoff as the personal representative of the estate of Cyrus Bernstein.[1] The trial court (Judge Wright) dismissed the suit, and the principal issue we decide here is whether, as Faris contends (and as he argued below), Burtoff's suit is barred by the relevant three-year statute of limitations.[2] We hold that it is. At the same time, we vacate the trial court's order granting Rule 11 sanctions against Burtoff and remand the case for further consideration of that issue.

## I.

■ Faris began representing Burtoff in the administration of the Cyrus Bernstein estate in 1996. In January 2002,

---

1. Burtoff, a nephew of Bernstein, was also a contingent beneficiary of that estate.

2. Although the trial court did not reach that issue, this court may affirm the dismissal on alternative grounds provided, as in this case, no factual questions relevant to the limita-

tions issue need to be resolved by the trial court. *See, e.g., Greycoat Hanover F St. Ltd. P'ship v. Liberty Mut. Ins. Co.,* 657 A.2d 764, 767 (D.C.1995); *Vaughn v. United States,* 579 A.2d 170, 173 (D.C.1990).

however, Burtoff sued David Albert, the personal representative of the estate of Ruth Bernstein (Cyrus's spouse) for breach of fiduciary duty and other torts ("*Burtoff I*"), and in August 2002 amended the complaint to join Faris as a defendant, alleging that in his role as attorney to Albert in the Ruth Bernstein matter Faris had committed legal malpractice and other wrongdoing. For this reason, on September 11, 2002, Faris withdrew from representing Burtoff in regard to the Cyrus Bernstein estate. Faris's withdrawal letter of that date stated unequivocally that he had withdrawn from the representation because "I can no longer effectively represent you as counsel" in light of Burtoff's suit against him in the Ruth Bernstein matter. Contrary to suggestions in Burtoff's brief on appeal, no evidence of record permits a factual inference that Faris performed legal services on Burtoff's behalf after September 11, 2002.

Burtoff did not file the present suit against Faris ("*Burtoff II*") until November 18, 2005, more than three years after Faris had withdrawn from the representation.[3] Burtoff's suit is time-barred, therefore, unless the discovery rule, *see, e.g., Wagner*, 847 A.2d at 1154, postponed the accrual of his cause of action. We hold that it did not.

■ Under the discovery rule, the plaintiff does not have *carte blanche* to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm. Nor need all damages be sustained, or even identified, for the cause of action to accrue; any appreciable and actual harm flowing from the defendant's conduct is sufficient.

*Ideal Elec. Sec. Co. v. Brown*, 817 A.2d 806, 809 (D.C.2003); *see also Beard, supra* note 3, 790 A.2d at 546. Burtoff's knowledge that Faris "[might] have caused [him] harm" is apparent simply from comparison of the complaints in *Burtoff II* and *Burtoff I*. In essence, *Burtoff II* alleged two things: (1) that Faris had "negligently draft[ed] and implement[ed a] disclaimer" by which Ruth Bernstein, for tax reasons, had meant to renounce her inheritance under Cyrus Bernstein's will, the result being tax assessments and other damages to Burtoff who stood to benefit from "conditional bequests of the Cyrus Bernstein estate" (App. 33); and (2) that Faris had "enter[ed] into [an] adverse representation" (a "conflict of interest") by "spearhead[ing a] legal assault [by Albert] on . . . Burtoff" in the administration of the Ruth Bernstein estate (while simultaneously representing Burtoff), a conflict that caused Burtoff sizeable "legal fees fending off Albert" (App. 34).

As to the first claim, however, Burtoff had repeatedly alleged in *Burtoff I* that Faris, together with Albert, breached "a duty of care in designing and executing the [Ruth Bernstein] disclaimer," a breach that was "the proximate cause of the Estate being reviewed and assessed excess taxes, thereby depleting monies earmarked to the children's general bequest, *i.e.*, the [planned Generation Skipping Tax

---

**3.** The relevant statute of limitations for each of Burtoff's claims against Faris is three years. *See* D.C.Code § 12–301(8) (2001); *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C.2004); *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546 (D.C.2002). In his brief, Faris initially argued that Burtoff's cause of action accrued at the latest on August 12, 2002, when Burtoff joined Faris as a defendant in *Burtoff I*, but at oral argument he conceded that the relevant date is September 11, 2002, since this court follows the "continuous representation rule." *See R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C.1997).

Trust]" (App. 23; see also App. 11 ("[t]he disclaimer is the most costly blunder that Albert," aided by Faris, "has created")). As to the second claim in *Burtoff II*, Burtoff had alleged in *Burtoff I* that, in breach of their "professional duty to avoid a conflict of interests" (App. 17), Faris and Albert "combined or otherwise acted in concert" (App. 22), to (among other things) "beg[i]n a course of legal assault upon ... Burtoff," "a grotesque course of ... estate litigation" that "had so depleted the [Ruth Bernstein] Estate through outrageous legal fees and accounting fees that the Estate could not pay the general bequest ... for the benefit of the Burtoff children" (App. 6–7). These overlapping allegations demonstrate that Burtoff, as a matter of law, knew "that [he] may have suffered injury and that [Faris] may have caused [him] harm," *Ideal Elec.*, *supra*, in the manner alleged in *Burtoff II* well before Faris's withdrawal from the representation.

Burtoff seeks to argue a form of lulling or "fraudulent concealment," *see, e.g., Fred Ezra Co. v. Psychiatric Inst. of Washington, D.C.*, 687 A.2d 587, 592 (D.C.1996), by pointing to affidavits Faris filed in *Burtoff I* minimizing his involvement with the administration of Ruth Bernstein's estate, as well as Albert's admission (allegedly for the first time) in a 2005 deposition that Faris had urged Albert to sue Burtoff to recover estate funds (see Br. for Appellant at 23–24). But "for the statute [of limitations] to begin running, [Burtoff] need[ed] only [to] have *some* knowledge of *some* injury" caused him by Faris, *Wagner*, 847 A.2d at 1154 (emphasis in original), and the *Burtoff I* complaint shows unmistakably Burtoff's belief that Faris, far from being a bit player, had been instrumental in Albert's campaign of "lies, misrepresentations, sham accountings, and deceit" (App. 7), as well as litigation, meant to deprive Burtoff and others of their inheri-

tance. (Indeed, Burtoff alleged, Faris's active deception began even earlier "[w]hen the final draft of the [Ruth Bernstein] Will was prepared by Mr. Faris, [and] Mr. Albert's name had been substituted as Personal Representative without Ruth's knowledge" (App. 4)).

■ Burtoff further argues that he did not know he had actually been damaged by Faris's malpractice until 2003 when, according to the *Burtoff II* complaint, "the final estate tax filing" resulted in the IRS "subject[ing Cyrus Bernstein's estate] to a 55% estate tax of more than $150,000" (App. 33). As this court has explained in rejecting a similar argument, however, "[a]lthough the extent of [the plaintiff's] injury could not be calculated until [the plaintiff] was fined by the IRS in 1997 [*i.e.*, within the limitations period], a claim for legal malpractice accrues when the plaintiff has sustained some injury, even if the injury occurs prior to the time at which the precise amount of damages can be ascertained." *Ideal Elec.*, 817 A.2d at 810–11; *see also Edwards v. Demedis*, 118 Md.App. 541, 703 A.2d 240, 242 (Ct. Spec.App.1997) (not necessary for "a formal notice of deficiency [to] be issued by the [IRS] in order for a claim based on alleged negligent tax advice to accrue"). The amended complaint in *Burtoff I* (filed more than three years before the complaint in this case) is replete with assertions of actual harm to the beneficiaries of the Bernstein estates from the misconduct of Albert and Faris, even without a final IRS assessment. *See, e.g.*, App. 11 (the disclaimer "blunder"—especially the failure "to defend the disclaimer"—"result[ed in] ... increased taxes"); App. 17–18 ("excessive tax liabilities" were caused the estate by the defendants' "mischaracteriz[ing] legitimate ante mortem gifts as loans" even in the face of an "IRS [request] for legal documents memorializing

the alleged loans"); App. 22 (misrepresenting to IRS the year of certain gift exclusions "will trigger over $30,000 in taxes"); App. 23 (the breach of duty by Albert and Faris resulted in "the Estate being reviewed and assessed excess taxes").[4]

In sum, Burtoff has shown no basis for excusing the untimeliness of his suit in *Burtoff II*, and the trial court's dismissal was correct for that reason.[5]

## II.

■ Following dismissal of *Burtoff II*, the trial court granted Faris's motion for sanctions under Super. Ct. Civ. R. 11, ordering Burtoff to pay Faris $13,702.67 in attorney's fees and costs. The court gave no reason for this ruling, but implicitly adopted one or both of the two reasons Faris had advanced to justify sanctions: that Burtoff's complaint was barred "by the dismissal of the same claims in *Burtoff I*" (App. 183), and was similarly barred by the statute of limitations (App. 185). In either case, Faris asserted, Burtoff had not conducted the reasonable inquiry required by Rule 11(b) before filing, and had filed the suit "for an improper purpose[,] namely, to harass . . . Faris and to attempt to re-litigate issues . . . adjudicated in

*Burtoff [I]*" (App. 181–82). *See* Rule 11(b)(1).

We are unable to affirm the award of sanctions on this record. First, where—as here—the trial court's order "does not tell us . . . what it relied upon in deciding that sanctions were warranted," we have in the past remanded for explanation of the reasons. *Montgomery v. Jimmy's Tire & Auto Ctr.*, 566 A.2d 1025, 1029 (D.C.1989). *See also Williams v. Board of Trustees of Mount Jezreel Baptist Church*, 589 A.2d 901, 911 (D.C.1991); *King v. King*, 579 A.2d 659, 666 (D.C.1990). More importantly in this case, Faris all but conceded at oral argument that the basis on which the trial court dismissed *Burtoff II*—*i.e.*, that "this is the same lawsuit [as *Burtoff I*]," leaving the court with "no jurisdiction to change any order . . . entered by [the judge in that case]" (App. 59)—has no basis in the doctrines either of *res judicata* (claim preclusion) or of issue preclusion, since no final judgment had been entered in *Burtoff I* at the time *Burtoff II* was dismissed (or even now). *See, e.g., Davis v. Davis*, 663 A.2d 499, 503 (D.C.1995).[6] Faris's inability to explain, on brief or at oral argument, why the partial summary judgment in *Burtoff I* foreclosed the present suit demonstrates that the trial court's finding of a Rule 11 violation may have rested on a misapprehension of the law.

---

4. Because this is a case where the attorney is alleged to have "negligently draft[ed] a document" *i.e.*, the disclaimer, rather than one claiming "negligent error [by an attorney] in the prosecution of a lawsuit," the injury Burtoff alleges was most likely "realized [for limitations purposes] at the time of the attorney's error," *Wagner v. Sellinger*, 847 A.2d 1151, 1156, 1157 n. 9 (D.C.2004), and Burtoff's reliance on the *Wagner* decision is misplaced.

5. We reject Burtoff's argument that the trial court violated his right to due process by hearing argument on the motion to dismiss at the initial scheduling conference, and thereafter ruling. *See In re Estate of Delaney*, 819

A.2d 968, 991–92 (D.C.2003). Burtoff had previously filed his written opposition to the motion to dismiss, and he was given full opportunity at the conference hearing to refine his arguments. We likewise find no abuse of discretion in the trial court's refusal to enter a default judgment against Faris. *See, e.g., Iannucci v. Pearlstein*, 629 A.2d 555, 558 (D.C. 1993).

6. Specifically, claims against Albert in *Burtoff I* remained (and remain) pending in the trial court, and no entry of final judgment as to Faris, *see* Super. Ct. Civ. R. 54(b), has been directed.

*See Williams,* 589 A.2d at 910 (a finding of a Rule 11 violation is reviewed for abuse of discretion); *Johnson v. United States,* 398 A.2d 354, 368 (D.C.1979) (the failure to apply proper legal principles may result in an abuse of discretion). Finally, although we have affirmed the trial court's dismissal of *Burtoff II* on the alternative ground (not reached by that court) of statute of limitations, it is not obvious to us that an award of Rule 11 sanctions would be compelled, or even justified, by Burtoff's untimely filing of that suit. The trial court must decide that issue in the first instance, evaluating as well the additional circumstances Faris cited (see App. 187–88) in support of sanctions. We express no opinion on the proper outcome of that inquiry.

Accordingly, we vacate the order awarding Rule 11 sanctions and remand the case for further consideration of that issue. We affirm the order dismissing *Burtoff II.*

*So ordered.*